JAMES H. McSURELY, Appellee, v. H. L. McGREW ET AL.,
Appellants.

**Constitutional law:** LEGISLATIVE USURPATION OF JUDICIAL POWER.
1 After commencement of an action the question of jurisdiction
is purely judicial, and a legislative act which attempts to deprive
the court of jurisdiction of the action is unconstitutional.

**Counties:** PUBLIC REVENUES: LEGISLATIVE CONTROL. While a county is
2 a body corporate, still it is a creature of the State for public
purposes, and its revenues are subject to legislative control, and
neither the county nor any of its citizens have such a vested
interest therein that they can complain of a legislative act re-
lieving a county treasurer from liability on his bond for the loss
of county funds without his fault.

**Statutes:** CURATIVE ACTS. A curative act of the legislature is nec-
3 essarily retroactive in character and undertakes to cure errors
or irregularities in legal or administrative proceedings, and to
vitalize contracts otherwise uneffective because of a failure to
comply with some technical requirement, but not involving juris-
dictional matter or substantive contract rights; and may be
enacted when the error to be cured consists in the doing of
some act, or the doing of it in such manner as the legisla-
ture might have made immaterial or have authorized by a prior
law.

**Same:** SPECIAL LEGISLATION: DELEGATION OF LEGISLATIVE POWER. The
4 legislature has power to release a particular county treasurer
from liability on his official bond for the loss of public funds,
on the ground that he is a public officer, and the act will not
be unconstitutional as special legislation; and having such power
it may delegate it to the supervisors of the county, or by a
curative act may ratify such action of the supervisors previously
taken.

**Same:** SPECIAL IMMUNITY. A curative act of the legislature ratifying
5 the action of a board of supervisors in releasing a county treas-
urer from liability for the loss of public funds, through no fault
of his, is not objectionable, either as conferring upon him a
special benefit, or as appropriating a sum of money to private
use.

**Same:** COUNTY TREASURER: LOSS OF FUNDS: RELEASE FROM LIABILITY.
6    Where public funds deposited in a bank were lost through no
violation of law or fault of the county treasurer, and the super-
visors of the county as a matter of justice decided that the
county rather than the treasurer should stand the loss, a cura-
tive act ratifying the action of the board in releasing his official
bond from liability therefor is valid, and is not a repeal of
Code, section 1457, providing that certain conduct with reference
to the deposit of money shall not release a treasurer from lia-
bility.

*Appeal from Henry District Court.*—Hon. James D.
Smythe, Judge.

Tuesday, November 17, 1908.

Action at law upon the official bond of H. L. Mc-
Grew, county treasurer, to recover the amount of certain
money, lost through the failure of a bank in which county
funds were deposited, without authority of the board of
supervisors. Defendants rely upon a resolution of the board
of supervisors exonerating the treasurer from liability and
a curative act passed by the Legislature. The case was
tried to the court, resulting in a judgment for plaintiff,
and defendants appeal.—*Reversed.*

*Walker & McBeth* and *E. L. McCoid,* for appellants.

*J. C. Mitchell* and *F. M. Hunter,* for appellee.

Deemer, J.—H. L. McGrew was treasurer of Van
Buren County, Iowa, from July, 1900, to January, 1907,
and as such he gave the bond in suit, signed by his co-
defendants as sureties. One D. H. Moore was McGrew's
immediate predecessor. At the January, 1899, session of
the board of supervisors of Van Buren County a resolu-
tion was passed, authorizing said treasurer to deposit coun-
ty funds in the bank of E. H. Skinner & Co. to an amount

not exceeding $10,000 at any one time. January 12, 1899, the bank executed a bond to secure such deposits as required by law. Moore died during his incumbency of the office, and McGrew was appointed to fill the vacancy on or about July 7, 1900, and at the succeeding election in November was chosen by the electors to fill out the term. Since that he was re-elected for two full terms. After his appointment, and again after his election, he submitted to the board of supervisors and to the county attorney the question as to whether or not the previous bond given by the bank to Moore was sufficient, and as to whether or not he should obtain a new bond, and he was informed by both that he need not get a new bond, and that he had the right to make deposits in the bank under the previous resolution of the board. Pursuant to this advice he made deposits in the bank until November of the year 1904, when the bank went into voluntary bankruptcy. After the closing up of the estate in bankruptcy and receiving the dividends declared, there was still due and owing the county from the bank $2,091.09. By authority of the board the treasurer then brought action against the sureties on the bond given by the bank, and prosecuted the same to final judgment, which resulted in a finding that the sureties were not liable for the deposits made in the bank. On January 7, 1907, the treasurer, being about to retire from office, made a settlement with the board of supervisors, by the terms of which he was expressly released from all liability on account of the deposits made in the bank, and given a full receipt for all money and property coming into his hands as county treasurer, and his bond was discharged, and the sureties thereon released from any liability growing out of the deposits in the bank, or on account of the failure of said bank. Thereafter, and on January 16, 1907, plaintiff, who is a resident and taxpayer of Van Buren County, caused a notice to be served upon the board of supervisors that, unless they proceeded to forthwith col-

lect the above-named balance from McGrew and the sureties on his bond, he (plaintiff) would, on behalf of himself and all other residents and taxpayers, institute an action against the treasurer and his sureties for the collection of the money for and on behalf of the county and the taxpayers thereof. The board taking no action, this suit was commenced by plaintiff on February 4, 1907, upon the official bond of the county treasurer to recover the amount lost through the failure of the bank of E. H. Skinner & Co., the petition alleging that the suit was brought on behalf of plaintiff and all other taxpayers of Van Buren County, for the benefit of the county.

On February 28, 1907, the Legislature passed a curative act, purporting to legalize the acts and resolutions of the board of supervisors in settling with McGrew and releasing and discharging his bond and the sureties thereon. The act also attempted to make void any action brought, or attempted to be brought, by any citizen of the county upon the treasurer's bond, declaring that the action should be without jurisdiction and void. See Acts 32d Gen. Assem. (Laws 1907, chapter 255, sections 1, 2). This act did not go into effect until March 7, 1907, which was some time after plaintiff had commenced this suit. The defendants rely upon the actions and resolutions of the board of supervisors of Van Buren County, and upon the so-called curative act of the Thirty-Second General Assembly. Plaintiff claims that the acts and resolutions of the board were without authority, and were and are null and void, and further says that the curative act is unconstitutional in that it deprived, or attempted to deprive, the county of certain vested rights, impaired the obligations of the treasurer's bond, granted McGrew special immunity not given to others in the same situation, and that the act is not general and uniform in its operation, and is therefore void. The trial court adopted plaintiff's theory of the case by overruling a demurrer to the reply, pleading

the facts and conclusions above recited regarding the acts and resolutions of the board and the so-called curative act of the Legislature. The appeal challenges this ruling, and presents nothing but the effect of the acts and resolution of the board and of the legislative enactment. Something is said in the argument regarding plaintiff's right to sue, but no such question is presented by the record now before us, and it need not be considered on this appeal. Indeed the only question presented by the demurrer is the constitutionality of the legalizing act, and to that proposition we shall give our attention.

I. Remembering that this action was commenced before the curative act became effective, it is apparent, we think, that the second section thereof is unconstitutional and beyond the power of the Legislature. After action is brought it is certainly beyond the power of the Legislature to declare that action void and the court in which it is pending without jurisdiction. Such matters are purely judicial, and not legislative, and under our three-department system of government it is inadvisable for one to assume the powers, duties, or responsibilities of the other. When action is once commenced the question of jurisdiction is purely a judicial one, and the Legislature should not attempt to usurp the functions of the judiciary by such an act as is now under consideration. These principles are so fundamental as scarcely to need the citation of authorities in their support. But see, *Kilbourn v. Thompson,* 103 U. S. 168 (26 L. Ed. 377); *Dickerson v. Acosta,* 15 Fla. 618; *Parmalee v. Lawrence,* 48 Ill. 331; *Wanser v. Hoos,* 60 N. J. Law, 482 (38 Atl. 449, 64 Am. St. Rep. 600); *O'Conner v. Warner,* 4 Watts & S. 227; *Gough v. Pratt,* 9 Md. 527; *State v. Carr,* 129 Ind. 44 (28 N. E. 88, 13 L. R. A. 177, 28 Am. St. Rep. 163); *Felix v. Board,* 62 Kan. 832 (62 Pac. 667, 84 Am. St. Rep. 424); *Penn v. Wheeling Co.,* 18 How. 440 (15 L. Ed. 449), and *Com.*

1. CONSTITUTIONAL LAW: legislative usurpation of judicial power.

*v. New Bedford,* 2 Gray (Mass.), 339. If the defense were bottomed upon the second section of the curative act alone, it manifestly would be without merit. We may eliminate the second section of the act in question as clearly unconstitutional.

II. The case must turn upon the acts and resolutions of the board of supervisors and the effect of the so-called curative act in so far as it attempts to validate these

2. Counties: public revenues: legislative control.

proceedings. It is practically admitted that the county treasurer had no right to make the bank deposits he did, and we are of opinion that the board of supervisors was without power to pass a resolution discharging the treasurer's bond and releasing his sureties. But it is contended that there was enough doubt about the matter to justify the curative act, and that, whether this be so or not, the Legislature had power to cure any defects in the resolution and acts of the board, and that, even had there been no resolution, the Legislature had the authority to relieve McGrew from responsibility. This is predicated upon the thought that the Legislature has plenary power over counties and their officers; that no contract rights were impaired, and no vested rights taken away. If nothing but private rights were involved, it is manifest that the act could not be sustained. But the matters involved here are public, and the county of Van Buren is the real party in interest. A county, while a body corporate under our law, is a subdivision of the State, created for administrative and other public purposes, owes its creation to the State, and is subject at all times to legislative control and change. No citizen has any vested right in or to its revenues. These may be changed, diverted to other uses, or taken away, and no one may complain on the theory that his interests have been affected or any contract rights destroyed. The Legislature might have permitted the deposit of county funds in banks and absolved the county officers from any

liability on account of such deposits. Neither the county nor any of the inhabitants thereof had any vested interest in the funds coming into the county treasurer's hands. *County of Richland v. Lawrence,* 12 Ill. 1; *Bailey v. City,* 3 Hill (N. Y.) 531 (38 Am. Dec. 669); *Pennie v. Reis,* 132 U. S. 464 (10 Sup. Ct. 149, 33 L. Ed. 426); *Sangamon County Board of Supervisors v. City of Springfield,* 63 Ill. 66; *People v. Power,* 25 Ill. 187; *Blanding v. Barr,* 13 Cal. 343; *Creighton v. San Francisco,* 42 Cal. 446.

It is said that, in the matter of the application of revenues, the legislative conscience will not be interfered with by the courts, and that they may be diverted to the benefit of private individuals if the Legislature is so advised. Again it is said that the power of a municipality to raise money by taxation is a political one, delegated by the Legislature, and that the fund, when collected, must necessarily be within the control of the Legislature. *Auditor General v. O'Connor,* 83 Mich. 464 (47 N. W. 443); *Williams v. Eggleston,* 170 U. S. 304 (18 Sup. Ct. 617, 42 L. Ed. 1047); *Mt. Pleasant v. Beckwith,* 100 U. S. 514 (25 L. Ed. 699). The Legislature undoubtedly had power, in the first instance, to absolve its county treasurer from liability when he deposited money in solvent banks; and, as no contract rights are involved, save as the statute created such rights, there seems to be no constitutional objection to passing a retroactive law which would operate upon past transactions. *State ex rel. Bulkeley v. Williams,* 68 Conn. 131 (35 Atl. 24, 421, 48 L. R. A. 478). The bond in suit, while a contract, was entered into between a dependent government and an officer thereof. The duties of such officer were prescribed by statute, and not by the terms of the bond, and these duties might at any time be changed without violating the terms of that instrument. Even after suit brought, the law may be changed, for there is no vested right to a particular decision. *Windsor*

*v. Des Moines,* 110 Iowa, 175. See, as sustaining these views, *Beecher v. Board of Supervisors,* 50 Iowa, 538. That the Legislature has plenary power over all municipal corporations and their officers is too well settled to admit of argument. And it is just as well settled that the same power exists as to public revenues. An interesting and instructive case on this subject is found in 44 Ind. 524, entitled *Lucas v. Board of Commissioners.* The Supreme Court of Indiana held that an act of the Legislature, taking away from counties stock issued to them by a private corporation, in consideration of the proceeds of a certain tax, and giving the same to the taxpayers who had paid the tax, was not unconstitutional. This decision was affirmed by the Supreme Court of the United States upon appeal. See *Board of Com'rs of Tippecanoe Co. v. Lucas et al.,* 93 U. S. 108 (23 L. Ed. 822). These cases contain a careful review of the authorities upon the subject, and are decisive of one of the main questions involved. See, also, Abbott on Municipal Corporations, sections 22, 84, 88, and cases cited.

Of course, under the guise of legislative control, a private citizen can not be deprived of any of his rights against a municipal corporation. They are as sacred as if they existed against a private one. But the municipality itself can not complain of any act of the Legislature diminishing its revenues, amending its charter, or even dissolving it entirely. It may, of course, acquire certain proprietary or private rights, not held by the public in general of which it can not be deprived. See *Sinking Fund Cases,* 99 U. S. 700 (25 L. Ed. 496); *Mayor v. R. R. Co.,* 32 N. Y. 261; *Webb v. Mayor,* 64 How. Prac. (N. Y.) 10; *People v. O'Brien,* 111 N. Y. 1 (18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684); *Montpelier v. Montpelier,* 29 Vt. 12 (67 Am. Dec. 748), and *State ex rel. White v. Barker,* 116 Iowa, 96. But this rule, or rather exception to the general rule, seems to apply only

to property reduced to possession, or held in trust for the inhabitants of the territory as distinct from the people as a whole.  It does not apply to executory contracts, or to provisions concerning funds or revenues.  City, county, and township funds are subject to legislative control.  *Richland Co. v. Lawrence Co.,* 12 Ill. 1; *Youngs v. Hall,* 9 Nev. 212; *People v. Fields,* 58 N. Y. 491; *Home Ins. Co. v. City Council,* 93 U. S. 116 (23 L. Ed. 825); *Indianapolis Co. v. Indianapolis,* 50 Ind. 215.  The action in the instant case is upon a bond given by the county treasurer to secure public funds raised through a power delegated by the Legislature to the municipality—a fund which had been lost without the fault of the official—and the remedy which the county had on that bond was in no sense a vested right.  The liability was created by act of the Legislature, and doubtless would not have existed at common law, and in so far as the inhabitants of the county are concerned that remedy may be taken away.  Doubtless the Legislature could not have impaired the obligation of defendant's bond in such a way as to deprive him of any of his rights thereunder, but there was no such contract between the state and the municipality or the inhabitants thereof, with reference to the defendant's liability on the bond, as comes within the constitutional limitation.  Hence the Legislature had the power, by proper enactment, to relieve defendant of his liability under the bond, a liability which was created primarily by the Legislature, and which, in so far as the State and the various subdivisions thereof are concerned, may be changed at pleasure.  There seems to be no doubt about the legislative power over the funds and revenues of a *quasi* municipal corporation.

The next question relates to the manner whereby that power may be executed.  The act in question, denominated a legalizing one, undertakes, after reciting the facts with reference to the matter as set forth in the statement of this case, enumerated at length in the preamble, to vali-

date everything done by the board of supervisors as if fully and in every respect authorized by law. In form it is a curative or healing act; and it is argued by appellee that in this form it is unconstitutional, because not a healing act, but one of substantive legislation, unauthorized because special, not uniform in its operation, and granting special immunities contrary to the express limitations of the Constitution.

It is a little difficult to define a curative act. It is necessarily retrospective in character and undertakes to cure or validate errors or irregularities in legal or administrative proceedings, and to give effect to contracts for failure to comply with some technical requirement. *Meigs v. Roberts,* 162 N. Y. 371 (56 N. E. 838, 76 Am. St. Rep. 322). If the defects are jurisdictional or relate to substantive contract rights, they can not ordinarily be cured by a healing act. Generally speaking, the Legislature may by subsequent act validate and confirm previous acts of a corporation otherwise invalid. *Bridgeport v. Railroad,* 15 Conn. 475; *Mattingly v. Dist. of Col.,* 97 U. S. 687 (24 L. Ed. 1098); *McMillen v. Boyles,* 6 Iowa, 304; Id., 391; *Atchison v. Butcher,* 3 Kan. 104; *San Francisco v. Real Estate,* 42 Cal. 517; *Anderson v. Santa Anna,* 116 U. S. 364. This is in accord with the general rule that a curative act may be passed whenever the irregularity to be healed consists in the doing of some act, or the doing of it in such a manner as the Legislature might have made immaterial or have authorized by a prior law. *Boardman v. Beckwith,* 18 Iowa, 292; *Richman v. Board,* 77 Iowa, 517; *Windsor v. Des Moines,* 101 Iowa, 343; *Witter v. Board,* 112 Iowa, 391. Such an act is of necessity special, and can not be made general, and its nonuniformity is no ground of attack. *Witter v. Board, supra.*

The difficulty with the act, viewing it from the standpoint of a healing one, is to find the power of the Legis-

3. STATUTES: curative acts.

lature to authorize the board of supervisors of Van Buren
County to do the acts and pass the resolutions which were
attempted to be cured. Within its field the Legislature is
supreme. The first section of the act now before us is
purely legislative in character. It is neither executive nor
judicial, and the Legislature has plenary power in its field
subject only to constitutional limitations or prohibitions.
Its power is not a delegated one, but supreme within its
proper sphere. Hence it may exercise all powers not
forbidden by the Constitution of the State, or delegated by
the people to the general government, or prohibited by the
Constitution of the United States. *McMillen v. Boyles,
supra.*

It is argued that the Legislature could not have dele-
gated to the board of supervisors the power to do the acts
and pass the resolutions it did, for the reason that such an
act would have been special, and not general,
would have been a delegation of legislative
powers to repeal a statute, and would have
granted special immunities to some not con-
ferred upon others. In other words, it is contended that a
law could not have been passed in advance authorizing
the board of supervisors of Van Buren County alone to
release the defendant McGrew and the sureties on his bond.
This argument is specious, to say the least, but we do not
regard it sound. It is true that, generally speaking, laws
must be uniform, and be general and not special in char-
acter; but they are not required by the Constitution to be
general, except where a general law can be made applicable.
It must also be conceded that a Legislature can not do in-
directly what it has no power to do directly. But the
question here is not the form of the original act, but rather
the power to do the thing which it attempted to cure by ap-
propriate legislation. *State v. Squires,* 26 Iowa, 340; *Iowa
Co. v. Soper,* 39 Iowa, 112. The substance and effect of
the act in question was the release of the county treasurer

4. SAME: special
legislation:
delegation of
legislative
power.

from liability on his official bond. Did the Legislature have that power, and if it did, could it have delegated that power to the board of supervisors? This brings us down to the very crux of the controversy, and presents a proposition upon which the courts are not fully agreed. The weight of authority seems to be to the effect that the Legislature may relieve a county treasurer, or other *quasi* municipal officer, from liability on his bond, on the theory that he is acting as an officer, and no one, save perhaps creditors, has any vested rights in and to the funds in his hands. Of the cases holding that the Legislature may release a county treasurer in such circumstances are *Board v. McLandsborough,* 36 Ohio St. 227 (38 Am. Rep. 582); *Mount v. State,* 90 Ind. 29 (46 Am. Rep. 192); *Pearson v. State,* 56 Ark. 148 (19 S. W. 499; 35 Am. St. Rep. 91); *State v. Board of Education,* 38 Ohio St. 3; *Nelson v. Milford,* 7 Pick. (Mass.) 18; *State v. Hammonton,* 38 N. J. Law, 430 (20 Am. Rep. 404); *State v. B. & O. R. R.,* 12 Gill & J. (Md.) 399 (38 Am. Dec. 319); *Shinkle v. Essex Board,* 47 N. J. Law, 96; *New Orleans v. Clark,* 95 U. S., 644 (24 L. Ed. 521). See, also, 1 Dillon on Municipal Corporations, 296, and Mechem on Public Officers, section 916. Probably the best exposition of this view is presented in the *Pearson* case, *supra.* It is bottomed upon the power which the Legislature has over agencies of the State, such as counties, townships, school districts, etc.; the power being plenary and virtually unlimited in character. To the contrary are, *Sanborn v. Com'rs,* 9 Minn. 273 (Gil. 258), *Bristol v. Johnson,* 34 Mich. 123, *People v. Supervisors,* 16 Mich. 254; *Spaulding v. Andover,* 54 N. H. 38; *Johnson v. Board,* 140 Ind. 152 (39 N. E. 311), and *McClelland v. State,* 138 Ind. 321 (37 N. E. 1088). The decisions in Michigan are based upon special constitutional provisions not found in our fundamental law. And the Minnesota and New Hampshire cases are not directly in point, although much

that is said seems to support appellee's contention. The position of the Indiana court is peculiar. The strongest opinions in support of the act of the Legislature are found in 44 and 90 Indiana Reports. But in the *McClelland* case a departure was made, based upon the special facts there appearing that the money lost belonged to the State school funds, none of which was raised by taxation, that there was no money in the county treasury, and that the act relieving the county treasurer from liability, and directing a return to him of the money he had paid, would result in a special tax upon a particular county for the benefit of an individual. But in the *Johnson* case the Indiana court holds an act relieving a county treasurer for money lost unconstitutional, no reference being made to previous cases. The decision is based solely upon the proposition that the act impairs the obligation of a contract. This proposition is regarded unsound by practically all the courts which have had occasion to consider the matter. The strongest argument against it is found in *State v. R. R. Co.*, 12 Gill & J. (Md.) 399 (38 Am. Dec. 319). This case was affirmed on error to the Supreme Court of the United States. See *State v. Baltimore & O. R. Co.*, 3 How. 534 (11 L. Ed. 714). See, also, *C. & A. R. R. v. Adler*, 56 Ill. 344. That the Legislature may delegate this power of release to county officials is shown in the cases already cited. Such delegation is not objectionable upon the ground that it confers legislative powers upon some other body than the lawmaking department of the government.

Again it is argued that it confers a special benefit or immunity upon a particular individual, and is therefore invalid. This proposition is fully answered in *State v.* 

5. SAME: special immunity. *Squires*, 26 Iowa, 344. It is not to be assumed that there were other county treasurers in the same situation as McGrew. A general law could not, therefore, be made applicable, for the situation dis-

closed a novel and most unusual state of facts. The act in question is not bad because special in character. A law, making an appropriation to a private individual or corporation, is not and can not be made general, and yet it is good. *Merchants' Co. v. Brown,* 64 Iowa, 275. Further it is argued that the effect of the act is to appropriate a sum of money to a private individual, and that this is beyond legislative power. These premises are not entirely correct; but, if they were, they do not justify the conclusion. McGrew received no money from either the State or the county for his own private gain. It was simply a question as to which should stand the loss of money which occurred without the county treasurer's fault. It was well said in *Guilford, Town of, v. Chenango County,* 13 N. Y. 149: "The Legislature is not confined, in its appropriations of public moneys, or of the sums to be raised by taxation in favor of individuals, to cases in which a legal demand exists against the State. It can recognize claims founded in justice and equity in the largest sense of these terms." And in *Blangburg v. Burr,* 13 Cal. 351, it is said that: "The power of appropriation which the Legislature can exercise over the revenues of the State it may exercise over the revenues of a county, for any purpose connected with their past or present condition, except where such revenues be devoted to a special purpose." Generally speaking, the Legislature may recognize a moral obligation; and, according to some of the cases, its conclusion in the matter is not subject to judicial review. We do not now hold to that broad doctrine, for a case may be so baseless as to call for judicial interference on the theory that the property of the individual is taken by taxation for a purely private end. We make no definite pronouncement upon that question at this time, for it is unnecessary to do so. Here the money was lost through no fault of the county treasurer. The equities as recited in the preamble of the bill, and as set forth in the statement of facts, are very

strongly in his favor, and it was simply a question as to whether he or his principals, the taxpayers of a subdivision of the State, should lose the money. The Legislature concluded that the loss should be borne by the taxpayers, and it is not for us to say that the legislation should fail because of the unwisdom of the General Assembly which enacted it. See *Merchants' Co. v. Brown,* 64 Iowa, 275.

There is no express statute against a private appropriation as such, except it be to a corporation, although there may be implied prohibitions, based upon the thought that taxation can not be justified for private purposes only. The defendant McGrew, as we have already said, was not given an appropriation, nor did he receive any benefit from the money lost by the bank. He is to be held, if at all, as a county official, and the question in its last analysis is his liability as such. This thought seems to have escaped the Indiana court in its latest pronouncement upon the subject. One of the cases of that court may be explained and justified, perhaps, upon the theory that the officer had made good the loss by paying the same into the treasury, and was asking for a private appropriation, which had to be made up through a levy and collection of taxes for his special benefit. Our own case of *Hanson v. Vernon,* 27 Iowa, 28, has something upon this subject. It does not appear from the pleadings in the case, or from the act in question, that there is to be any taxation of the property of Van Buren County for the private benefit of defendant, McGrew. The Legislature in its wisdom simply concluded that, according to the ordinary principles of just and fair dealing, it was not wise to have McGrew stand the loss due to the failure of the Skinner Bank. Conceding the right of review of such legislation by the courts, it does not appear that its conclusion was so baseless as to justify our interference. No special immunity was granted McGrew, as that term is used in our Constitution. Conceding *arguendo* that it was an immunity, it does not appear

that there were any others in the same situation who would be excluded from the benefits of such an act. *Mount v. State,* 90 Ind. 29 (46 Am. Rep. 192), and *New Orleans v. Clark,* 95 U. S. 644 (24 L. Ed. 521) contain much in support of this position.

Lastly it is said that the act in question amounts to a repeal or amendment of section 1457 of the Code providing that a county treasurer shall not. be relieved of liability

6. SAME: county treasurer: loss of funds: release from liability.

on his bond by reason of having deposited money in an approved and selected bank, and that such repeal can only be made by a general statute. There is no repeal of that statute. The question here is the liability of the treasurer on his official bond, given the county under the provisions of section 1183. In many States he would not be liable for money lost under the circumstances disclosed by this record; and, as we have seen, it was competent for the Legislature to relieve him under these circumstances, if it saw fit to do so. Section 1457 of the Code does not create the liability. It simply provides that certain conduct on his part with reference to the disposition of the funds shall not relieve him. He is not relying in any way upon the terms of that section. His contention with reference thereto is that, by reason of the advice and consent of the board and of the county attorney, he was induced not to take a bond for his own security, as he had a right, to do under that section, and as he intended to do, and would have done but for the advice of the county officials. The mere fact that such a statute as the one under consideration will increase the burdens of the taxpayers of a particular locality has never been regarded as controlling. We have approved statutes of many kinds having this effect, as have other courts, and the mere increase of burdens has never been held to be sufficient cause for setting aside legislation. Although we find no reason for holding the act now before us unconstitutional, we must confess a prejudice against legis-

lation of this character.   The precedent is not a good one and does not comport with our notions of legislative policy. But the proposition before us is not one of expediency or of wise public policy.   It is purely a judicial one, and relates solely to the power and authority of the Legislature, and not to the propriety of the act.

We discover no ground for disturbing the act, and the result is that the trial court was in error in overruling the demurrer, and its judgment must be, and it is, *reversed.*