EDWIN M. KUHL et al., Appellees, v. FARMERS BANK OF BOUTON, Appellee; DALLAS COUNTY et al., Interveners, Appellants.

CONSTITUTIONAL LAW:     Vested Rights—Municipal Corporations. The general assembly has constitutional power by legislative act to deprive a county of an existing right of preference in a deposit of money belonging to the county in an insolvent bank. (See Book of Anno., Vol 1, Const., Art. I, Sec. 21, Anno. 67 *et seq.*)

Headnote 1: 12 C. J. p. 971 (Anno.)

*Appeal from Dallas District Court.*—W. S. COOPER, Judge.

FEBRUARY 15, 1927.

In the receivership of the above-entitled bank, Dallas Coun-

ty and its treasurer filed claim asking for preference, which was denied by the district court. They appeal.—*Affirmed*.

*Blake Willis*, for appellants.

*White & Clarke*, for appellee.

ALBERT, J.—The Farmers Bank of Bouton was a partnership. It closed its doors, and a receiver was appointed about the 22d day of January, 1925. At the time the receiver took charge, Dallas County had on deposit to its credit the sum of $4,319.24. On the 30th day of March, 1925, proof of claim was filed by McKay, county treasurer of Dallas County, with said receiver, claiming that the aforesaid amount was a special deposit and a special fund derived from taxes due and owed to Dallas County, and asking that said sum be allowed by the receiver as a preferred claim. A stipulation was made, which covered most of the matters in the case; the aforesaid amount was agreed upon as being the amount on deposit; and it was further stipulated that the money thus in the hands of the bank was taxes collected by the bank for the county treasurer, but still remaining in the bank at the time of the receivership. On the 11th day of May, 1925, a petition was filed, elaborating the claim of the county, and the case was submitted to the court on an agreed statement of facts.

At the time this receiver was appointed, Section 12719 of the Code of 1924 was in force, which reads as follows:

"When the property of any person, partnership, company, or corporation has been placed in the hands of a receiver for distribution, after the payment of all costs the following claims shall be entitled to priority of payment in the order named:

"1. Taxes or other debts entitled to preference under the laws of the United States.

"2. Debts due or taxes assessed and levied for the benefit of the state, county, or other municipal corporation in this state.

"3. Debts owing to employees for labor performed as defined by Section 11717."

In *Dickinson County v. Leach* (Iowa), 211 N. W. 542 (not officially reported), we held that rights such as are asserted here by the county against the receiver were settled and fixed by the law in operation at the time of the appointment of the receiver.

Appellee concedes that, under this section of the statute and our decision in *In re Receivership of Marathon Sav. Bank,* 198 Iowa 692, the county or the treasurer would be entitled to have this claim allowed as a preferred claim; and we have held, under similar circumstances, in the case of *Leach v. Farmers & Merch. Sav. Bank of Boyer,* 202 Iowa 881, that a preference should be given, under circumstances of this kind. If this were all there is in this case, it would be easily disposed of, under both the statute and the holdings of this court. The case, however, has a different angle from anything that has been heretofore before us, in this: The forty-first general assembly passed Chapter 182, reading as follows:

"Section 1.   Section 12719 of the Code, 1924, is hereby amended by adding thereto the following: 'The provisions of this section shall not apply to the receivership of state banks, savings banks, loan and trust companies, or private banks, and in the receivership of state banks, savings banks, loan and trust companies, or private banks, no such preference or priority shall be allowed as is provided in this section, except for labor as provided by statute.'

"Section 2.   The provisions of this amendment are declaratory of the intent of the legislature and of its interpretation of the provisions of Section 12719 of the Code, 1924."

This law was in operation, under a publication clause, from and after the 9th day of April, 1925. It is therefore to be seen that, while the county filed its claim prior to the passage of this law, the matter was not tried or disposed of until after the time this law went into operation; and the question is whether or not this enactment by the legislature in any way affects the rights of the parties to this litigation. To put it another way, at the time the receiver was appointed and the county filed its claim, it was entitled to have said claim allowed as a preferred claim.   Did the aforesaid Chapter 182, Acts of the Forty-first General Assembly, deprive it of this right?

It will be noted, by reference to that chapter, that the force and effect of Section 12719, above cited, were wholly destroyed, so far as receiverships of banks were concerned, and it is further provided that no such preference or priority shall be allowed as provided in the statute, "except for labor." While the rights of the county are fixed and determined as of the date

of the appointment of the receiver, yet its rights are wholly worked out on the theory that it is a part of the machinery, or an arm of the state, subject to the control and direction of the state; and the question is whether or not, when it had this right to a preference, the state can take it away from the county, or waive such right or preference.

The only case that is called to our attention is the case of *McSurely v. McGrew*, 140 Iowa 163. In that case, the county treasurer had deposited funds in the bank without authority, and the bank failed. The board of supervisors made settlement with the county treasurer, allowing him credit for the funds thus lost in the bank, and relieving the sureties on his bond from liability because of his default. The legislature subsequently passed an act approving the action of the board of supervisors in so making settlement with the county treasurer and relieving his bonds. A subsequent county treasurer brought an action on the bond of his predecessor in office, seeking to recover from the sureties the amount thus lost in the bank, and was met with the action of the board of supervisors, supported by the curative act of the legislature. It was practically admitted that the county treasurer had no right to make the bank deposit he did, and that the board of supervisors was without power to pass a resolution discharging the bond and releasing his sureties; hence there was left solely the question of the validity of the curative act. The question was whether or not the legislature could pass this curative act. In that case, we said:

"A county, while a body corporate under our law, is a subdivision of the State, created for administrative and other public purposes, owes its creation to the State, and is subject at all times to legislative control and change. No citizen has any vested right in or to its revenues. These may be changed, diverted to other uses, or taken away, and no one may complain on the theory that his interests have been affected or any contract rights destroyed. The Legislature might have permitted the deposit of county funds in banks and absolved the county officers from any liability on account of such deposits. Neither the county nor any of the inhabitants thereof have any vested interest in the funds coming into the county treasurer's hands. * * * The Legislature undoubtedly had power, in the

first instance, to absolve its county treasurer from liability when he deposited money in solvent banks; and, as no contract rights are involved, save as the statute created such rights, there seems to be no constitutional objection to passing a retroactive law which would operate upon past transactions. * * * That the Legislature has plenary power over all municipal corporations and their officers is too well settled to admit of argument. And it is just as well settled that the same power exists as to public revenues. * * * Of course, under the guise of legislative control, a private citizen cannot be deprived of any of his rights against a municipal corporation. They are as sacred as if they existed against a private one. But the municipality itself cannot complain of any act of the Legislature diminishing its revenues, amending its charter, or even dissolving it entirely. It may, of course, acquire certain proprietary or private rights, not held by the public in general of which it cannot be deprived. * * * City, county, and township funds are subject to legislative control. * * * The liability [on the bond] was created by act of the Legislature, and doubtless would not have existed at common law, and in so far as the inhabitants of the county are concerned, that remedy may be taken away. Doubtless the Legislature could not have impaired the obligation of defendant's bond in such a way as to deprive him of any of his rights thereunder, but there was no such contract between the state and the municipality, or the inhabitants thereof, with reference to the defendant's liability on the bond as comes within the constitutional limitation. Hence the Legislature had the power, by proper enactment, to relieve defendant of his liability under the bond, a liability which was created primarily by the Legislature, and which, in so far as the State and the various subdivisions thereof are concerned, may be changed at pleasure. There seems to be no doubt about the legislative power over the funds and revenues of a *quasi* municipal corporation.''

In other words, the substance of the *McSurely* case is that, while the county or the state would have an action against the sureties on the treasurer's bond for money wrongfully deposited in a bank, which money was lost by failure of the bank, yet the legislature, being the supreme power of the state, has the power, if it sees fit, to waive the claim which the county had against the

sureties on the bond, and relieve such sureties from liability under said bond, if the legislature in its wisdom should see fit so to do. We can see no difference between the principle laid down in the *McSurely* case and the one at bar. In the instant case, the county had a right to have its claim against this receiver declared a preferred claim; but, before it had availed itself of this right and procured such preference, the legislature, by the enactment of the aforesaid Chapter 182, deprived the county of such right, by repealing the very statute under which the right arose. There was no vested right in the county to its right of preference herein which could not be waived or taken away by the supreme power of the state; and the legislature having so done, the county must abide by the consequences.

In *Waddell v. Board of Directors*, 190 Iowa 400, in discussing the question of the reversion of a schoolhouse site, we said:

"No one then had a vested right in the future operation of the statute."

We reaffirmed this doctrine in *Independent Sch. Dist. v. Smith*, 190 Iowa 929.

The district court was right in its ruling, when it refused to allow the county and its treasurer a preference on this claim in the receivership.—*Affirmed.*

EVANS, C. J., and DE GRAFF and MORLING, JJ., concur.